# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

PATRICIA PHELPS,              )
                              )
    Plaintiff,         )
                              )
    vs.                )        Case No. 4:11CV1362MLM
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security )
                              )
    Defendant.         )

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Patricia Phelps ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g) et seq. Plaintiff filed a Brief in Support of the Complaint. Doc. 17. Defendant filed a Brief in Support of the Answer. Doc. 21. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 8.

### I.
### PROCEDURAL HISTORY

Plaintiff filed applications for benefits on December 21, 2007, alleging a disability onset date of March 15, 2007. Tr. 97-105. Her applications were denied and she filed a request for a hearing before an Administrative Law Judge ("ALJ"). Tr. 57-66. A hearing was held before an ALJ on August 25, 2009. Tr. 20-51. By decision, dated October 28, 2009, the ALJ found Plaintiff not disabled through the date of the decision. Tr. 10-19. The Appeals Council denied Plaintiff's Request

for Review. Tr. 1-9. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or

2

her Residual Functional Capacity (RFC). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir.

2007). In <u>Bland v. Bowen</u>, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)); <u>Hartfield v. Barnhart</u>, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. <u>Cox</u>, 495 F.3d at 617; <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>McClees v. Shalala</u>, 2 F.3d 301, 302 (8th Cir. 1993); <u>Murphy v. Sullivan</u>, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. <u>Davis v. Apfel</u>, 239 F.3d 962, 966 (8th Cir. 2001) (citing <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987). <u>See also</u> <u>Onstead v. Sullivan</u>, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. <u>Krogmeier</u>, 294 F.3d at 1022. <u>See also</u> <u>Eichelberger</u>, 390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell</u>

v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of

pain, the ALJ must consider:

> (1) the claimant's daily activities;

> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

> (3) any precipitating or aggravating factors;

> (4) the dosage, effectiveness, and side effects of any medication; and

> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at

1322. The absence of objective medical evidence is just one factor to be considered in evaluating the

plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations

by third parties and treating and examining doctors, as well as the plaintiff's appearance and

demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the

record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson,

363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220,

223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must

specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836,

841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).

The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d

1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969,

972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id.   Although

credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment

must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified at the hearing that she completed the tenth grade; that she lived with her son and his girlfriend and that they took care of her; that she last worked in 2007 as a day care worker; that she did not report her income in 2007; that she stopped working as a day care worker because her body got to the point where she could not take care of the children; that she had three screws and three staples put in her right foot in 2004; that at the time of the hearing she could not work because of fibromyalgia; that due to fibromyalgia she had "needles come up in [her] feet" from her waist down to her toes and had knives "slicing [her] up and down"; and that she had problems with her sciatic nerve and "DJD" in her lower back. Tr. 25-29. Plaintiff further testified that, "besides the unexpected fibromyalgia, [she] never know[s] when it's going to hit [her]. It [could] be in [her] collar bone. It [goes] down [her] arms, up to [her] arms, down [her] legs, [and] up [her] legs. It just, wherever it wants to go, that's where it goes." Tr. 29. Plaintiff also testified that she had "ischemia" disease in the right side of her head. Tr. 29-30.

The ALJ found that Plaintiff had not engaged in substantial gainful employment since March 15, 2007; that she had the severe impairments of degenerative disc disease, history of right ankle fusion and plantar fasciitis, degenerative joint disease, possible fibromyalgia, and chronic obstructive pulmonary disease (COPD); that Plaintiff did not have an impairment or combination of impairments which met or equaled a listed impairment; that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; that Plaintiff's statements regarding

the intensity, persistence, and limiting effects of her symptoms were not fully credible; that there were inconsistencies between the results of a investigation by Cooperative Disability Investigations Unit (CDI) and Plaintiff's allegations; that Plaintiff had the RFC to perform light work, except that she could not climb ladders, ropes or scaffolds and could only occasionally climb ramps and stairs, could only occasionally balance stoop, kneel crouch, and crawl, and must avoid concentrated exposure to pulmonary irritants and industrial hazards; that Plaintiff was capable of performing her past relevant work as a child care provider; and that, therefore, Plaintiff was not disabled within the meaning of the Act.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ did not adequately describe Plaintiff's medically determinable impairments; because the Appeals Council did not address new evidence indicating Plaintiff had significant dementia and severe headaches; because the ALJ failed to point to any medical evidence to document his RFC determination; because the ALJ failed to provide a legally sufficient reason for discrediting Plaintiff's complaints of severe headaches; because the ALJ posed a flawed hypothetical to the VE; because the ALJ's "mere conclusory statement" that Plaintiff could perform her past relevant work was insufficient; and because the ALJ made no findings regarding the mental demands of Plaintiff's past relevant work either as she performed it or as it is normally performed.

## A.     Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20

C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered inconsistencies in the record. In this regard, the ALJ considered that Plaintiff testified that she could no longer work due to pain; that she did not have the strength

to open baby food jars or sippy cups; that she could not bend over playpens or carry small children; that she had pain in her hips, legs, and back; and that she found it difficult to walk. Tr. 17. As also considered by the ALJ, Plaintiff testified that she used a walker to get to the hearing and that she used a walker at home. She further testified that she could walk "15, 20 feet" and that she could stand for "maybe five minutes." Tr. 32. The ALJ considered that Plaintiff was the subject of an investigation by the CDI and that the investigation report noted that Plaintiff said she had severe difficulties walking and sitting; that she needed to use a walker on a daily basis; and that she spent most of her time in bed.[1] Tr. 17. The ALJ also considered that Elbert H.Cason, M.D., reported that Plaintiff did not drive. Tr. 18. The court notes that Plaintiff stated on a Missouri Supplemental Questionnaire that she was not able to drive; that, when she did drive, she drove to church; and that she left her home, "when able," to go to the doctors or to church. Tr. 133-34.

Nonetheless, as considered by the ALJ, the CDI report states that Plaintiff was observed *getting into her car and driving* to a convenience store; that she appeared to *walk without difficulty* and *without a walker*; that she was observed *walking into a clinic* without the assistance of her son who drove her there; that she was observed while she shopped in a dollar discount store; that, while shopping, she *walked up and down the aisles* of the store, picking out various items to purchase; that she was observed *walking* "confidently and *standing in the checkout line for several minutes without difficulties*" that she did not use a cart in the store and *carried the items* she purchased; and that Plaintiff's son, who drove her to the store, did not accompany her inside to help her shop. Tr. 17-18. Additionally, the ALJ considered that Plaintiff was not observed having difficulty with her hands; that she opened her own car door and carried her purchases; that she used her key to unlock her house

---

[1]     Plaintiff was investigated because her statements on a claimant questionnaire were not consistent with her complaints to her treating doctors and because she did not start seeing a treating doctor until she "decided to apply for disability." Tr. 265.

door; and that she was not observed having any difficulties walking. Tr. 18. The court notes that the CDI report also states that Plaintiff was observed getting into an SUV and going to a gas station where Plaintiff walked from the car to the convenience store, stood for a short time in front of the store after exiting and talked, and then walked back to the SUV. The report states that, during this time, Plaintiff did not use an assistive device nor did she appear to need assistance to ambulate; that Plaintiff was observed stepping up to the curb from the driveway onto the sidewalk; that, when Plaintiff was driven to the doctor's office by her son, she was observed walking up the steps to enter her house without difficulty. Tr. 267-68. The CDI reported further states that Plaintiff "never appeared to have difficulty walking and that she did "not appear to be an individual who had limitations or had any difficulty ambulating." Tr. 268-69. Significantly, Plaintiff was observed on three different days. The ALJ concluded that the observations, as noted in the CDI report, detracted from Plaintiff's credibility. Additionally, the ALJ considered that the CDI report noted that Plaintiff said that she was very dependent on her son's fiancée's for all aspects of her daily living needs. The ALJ noted, however, that the son's fiancée, herself, was currently receiving disability benefits due to depression and a bad back. Tr. 17-18, 26-27. Moreover, Dr. Cason reported that Plaintiff said she was prescribed a walker by a doctor. Tr. 276. When Plaintiff applied for disability, however, she reported that she used a friend's walker. Tr. 130. At the hearing Plaintiff admitted that no physician had prescribed a walker. The court finds that the ALJ's decision regarding the inconsistences in the record is supported by substantial evidence and that it is consistent with the regulations and case law. See Eichelberger, 290 F.3d at 589 ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inconsistencies or other circumstances.").

Second, when Plaintiff was interviewed by Sandra Carusa, Ph.D., Plaintiff said that she was still watching children, although she was not left alone with them. Tr. 702. Also, despite Plaintiff's

telling Dr. Feen, on October 20, 2008, that she had headaches for five years, she had worked during much of that period. Tr. 27, 425. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years.").

Third, as considered by the ALJ, Plaintiff admitted at the hearing that she did not report income she received while working as a day care worker in 2006 and 2007. Tr. 18, 27.

Fourth, medical records are inconsistent with Plaintiff's complaint of cognitive problems and a mental impairment.[2] Plaintiff testified that she was told she had "long-term memory loss" by a doctor. Tr. 30. In her function report, Plaintiff indicated that she did not have difficulty following

---

[2]      To the extent that the ALJ and/or the Appeals Council did not specifically address records relevant to Plaintiff's complaint of a mental impairment as well as her complaint of physical impairments, this failure does not suggest that this aspect of Plaintiff's claim was not considered. See Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Such a failure by the ALJ and/or the Appeals Council does not require reversal in this matter because the record supports the Commissioner's overall conclusion. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir.2006) (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)).

written or verbal instructions and that she did not need to be reminded to complete chores. Tr. 135. Eliahu Feen, M.D., reported, pursuant to a neurological examination, on October 20, 2008, that Plaintiff said she had difficulty remembering things for the past several years and that her memory problem had "been stable." Tr. 425. Dr. Feen also reported that, upon examination, Plaintiff's memory was "3/3 at one and five minutes"; that she had a "good fund of knowledge"; that she was able to "follow three step commands easily"; and that she was unable to name the president before President Clinton. Tr. 427. Dr. Feen opined that Plaintiff had "*no clear memory disorder*" and that "[p]erhaps she ha[d] cognitive slowing," which may [be] secondary to her medications. Tr. 428 (emphasis added). When Plaintiff saw Dr. Feen on January 7, 2009, Dr. Feen reported that she was accompanied by her son's fiancée, who reported "further detail about the memory difficulties," including that, "in addition to forgetting events throughout the day," Plaintiff forgot where she left things and occasionally got lost while driving "on well-known routes and need[ed] to request information from passengers in the car to direct her further." Tr. 432. Upon conducting a mental status exam, however, Dr. Feen reported that Plaintiff's score was 28 out of 30. Scores of 24 or higher reflect normal functioning. See Karen S. Santacruz, M.D., & Daniel Swagerty, M.D., Early Diagnosis of Dementia, 63 American Family Physician 703-14 (2001). As such, to the extent Dr. Feen relied on the fiancée's reporting, this reporting is inconsistent with Dr. Feen's diagnostic testing. See Social Security Regulation ("SSR") 96-2p, 1996 WL 374188, at *2 (S.S.A. July 2, 1996) ("[It] is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record."). Further, Dr. Feen referred Plaintiff for cognitive testing with Dr. Carusa. Dr. Carusa saw Plaintiff on July 2, 2010, and observed that Plaintiff was "somewhat disinterested during testing"; that she wore dark glasses during testing

despite Dr. Carusa's suggesting that she might benefit from using her reading glasses; that test effort indicators were "below normal limits suggesting that [Plaintiff's] effort may have varied"; that this may have been due to "a multitude of causes including medication effects, motivation, and normal variance"; and that Dr. Carusa's current assessment may, therefore, "exaggerate cognitive difficulties." Tr. 702. Dr. Carusa did report that test results showed Plaintiff's attention was "severely impaired at less than the 1st percentile"; that Plaintiff had average ability to complete mental computation; that Plaintiff was fully oriented; that Plaintiff's conversational speech was normal for cadence and fluency; that Plaintiff's immediate recall of a story was severely impaired and delayed recall was mildly impaired; that she was moderately impaired in regard to initial learning of lists; that her visual memory was high average; and that Plaintiff's verbal reasoning was mildly impaired. Dr. Carusa opined that "present neuropsychological results reflect[ed] numerous impairments and decreases in scores over testing in 2009"; that, "[h]owever, [Plaintiff's] performance [was] inconsistent"; that an example of these inconsistencies was Plaintiff's "scores reflecting decreases and significant impairments in tasks of attention but improved and average functioning mental computation"; another example of the inconsistences was Plaintiff's doing "relatively well on free recall but severely impaired on forced choice of the same material"; and that Plaintiff's "variable effort [made] interpretation of the assessment difficult." Tr. 702-704. An ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record and may give more weight to the medical records than to a claimant's testimony. See Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987). As such, to the extent Plaintiff asserts that the ALJ improperly discredited her allegation that she had a severe cognitive or mental condition, the court

finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not suffer a severe mental or cognitive or mental condition.

Fifth, the ALJ considered that objective medical evidence did not support Plaintiff's allegation of disabling pain. Tr. 16-18. In particular, the ALJ considered that there was "really no evidence of fibromyalgia" and that there was no evidence of positive trigger points or of problems with Plaintiff's upper extremities or use of her hands. Tr. 17. The court notes that on multiple occasions, it was noted that Plaintiff did not have tenderness on examination. Tr. 471, 480, 496, 555, 584, 688. Indeed, to be diagnosed with fibromyalgia, a patient must have at least 11 out of 18 tender spots. See The Merck Manual 1370 (16th ed. 1992). Also, the court notes that Plaintiff was observed to have normal and/or steady gait on numerous occasions (Tr. 319, 428, 448, 471, 473, 480, 496, 613, 689, 694); that a November 6, 2007 x-ray of the lumbar spine showed no fracture, no spondyloysis or spondylolisthesis, no blastic or lytic lesions, and degenerative changes at L4-5 (Tr. 171); that Dr. Cason reported on March 12, 2008, that Plaintiff had decreased range of motion in her back and neck, no muscle spasm, slow gait, normal hip and ankle motion, 4/5 strength in the lower extremity muscles, normal grip strength and fine finger motions, and no neurological abnormality, including sensory of reflex deficits (Tr. 275-82); that a February 17, 2009 MRI showed that vertebral body height and bone marrow signal were within normal limits, the cervical spinal cord was within normal limits, no canal or neural foraminal stenosis and four levels, no significant canal or neural foraminal stenosis and one level, and mild-broad-based disc bulge at one level (Tr. 463); and that on numerous occasions through July 8, 2010, Plaintiff's motor and sensory functioning was reported to be intact (Tr. 428, 433, 480, 496, 555, 584, 613, 689). Significantly, as recently as March 27, 2010, Plaintiff had normal ROM in all four extremities, normal distal pulses, her extremities were non-tender to palpation, and she had no edema. Tr. 584-85. It is proper for an ALJ to consider the absence of

objective medical evidence to support a claimant's complaints although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir.2008)). See also Constock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir.1993) (holding that an ALJ properly discounted a claimant's complaints of pain when the medical evidence failed to establish a significant back problem). The court finds that the ALJ's consideration of the medical evidence relevant to Plaintiff's claim that she is disabled due to physical conditions, including degenerative disc disease, history of right ankle fusion and plantar fasciitis, degenerative joint disease, and possible fibromyalgia, is supported by substantial evidence and that it is consistent with the regulations and case law.

Sixth, as considered by the ALJ, despite Plaintiff's allegation that she was disabled due to COPD, Plaintiff continued to smoke cigarettes. Tr. 16, 33, 223, 479, 496. Plaintiff testified that she knew she could quit smoking. Tr. 33. Additionally, Plaintiff was counseled to stop smoking and techniques and options to help Plaintiff quit were discussed with her. Tr. 479, 496, 500, 505-506, 584, 671. In fact, on March 27, 2010, when Plaintiff presented to an emergency room with neck discomfort and a productive cough, it was reported that Plaintiff "reek[ed] of cigarette smoke." Tr. 584. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that an ALJ can discredit subjective complaints of pain based on claimant's failure to follow prescribed course of treatment). Additionally, subjective complaints of pain may be discredited where a claimant ceases to stop smoking upon a doctor's advice. See Wheeler v. Apfel, 224, F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997)) (holding that impairments which are controllable or amendable to treatment including certain respiratory problems, do no

support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application for benefits). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the regulations and case law.

Seventh, when Plaintiff presented to SSM DePaul Health Center, it was reported that she had osteoarthritis, and that among other things, regular low impact exercise such as walking, biking, and swimming would help keep her muscles strong and that stretching would help maintain range of motion. It was also noted that local heat therapy would help improve motion. Tr. 375. Also, on October 20, 2008, Dr. Feen recommended only that Plaintiff take aspirin for the headaches she had been having for the past five years. Tr. 428. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). Further, conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Eighth, although Plaintiff contends that she suffered from severe headaches, the record reflects that she did not complain of any ongoing problem with headaches when she presented for medical care on January 24, February 7, May 30, July 10, and August 22, 2007, on January 2, April 29, May 14, September 10, and November 4, 2008, or on February 25, 2009. Tr. 182, 184, 189, 192, 342, 345, 347, 350, 355, 382-83, 416, 418. Indeed, as reported by Dr. Feen, Plaintiff had a CT on

September 16, 2008, which showed evidence of ventriculomegaly but this only raised a "suspicion of normal pressure hydrocephalus" and was consistent with "*mild* chronic small vessel eschemic disease." Dr. Feen noted that Plaintiff did not have significant change during the five years she reported having headaches and that she did not have "any other associated symptoms." He concluded that there was no clinical evidence of normal pressure hydrocephalus. Tr. 428. Thus, the medical records are inconsistent with Plaintiff's claim that she is disabled due to severe headaches. See Halverson, 600 F.3d at 932; Comstock, 91 F.3d at 1147. As such, the court finds that the ALJ's finding that Plaintiff's did not have a severe impairment resulting from headaches is supported by substantial evidence and that the ALJ's determination, in this regard, is consistent with the regulations and case law.

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and that it is consistent with the regulations and case law.

**B.      Plaintiff's Residual Functional Capacity:**

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney, 228 F.3d at 863). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although

assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

As stated above, the ALJ found that Plaintiff had the RFC to perform light work except that she could not climb ropes or scaffolds and could only occasionally climb ramps and stairs, could only occasionally balance stoop, kneel crouch, and crawl, and must avoid concentrated exposure to pulmonary irritants and industrial hazards. The regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6.

First, as required by the Regulations, the ALJ considered the medical evidence, observations of doctors, and Plaintiff's own description of her conditions upon determining Plaintiff's RFC. See Lauer, 245 F.3d at 703. The court finds that the ALJ's decision, in this regard, is based on substantial evidence. Second, a claimant's RFC need only include her credible limitations. See Tindell v.

Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Upon determining Plaintiff's RFC, the ALJ found that Plaintiff was not fully credible. The court has found above that the ALJ's credibility determination is based upon substantial evidence.

Third, upon determining Plaintiff's RFC, the ALJ first identified Plaintiff's functional limitations and restrictions, and then assessed her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). In this regard, he determined that, although she can perform light work, she can do so only with certain restrictions as set forth above.

Fourth, to the extent Plaintiff contends that the ALJ's RFC determination is not consistent with Singh, 222 F.3d 448, or with Lauer, 245 F.3d 700, Plaintiff is mistaken. In Singh and Lauer, the Eighth Circuit noted that substantial medical evidence supported the claimant's allegations. In Plaintiff's case, however, as found by the court, the medical evidence is inconsistent with Plaintiff's allegations of disabling conditions. Moreover, in both of those cases, the court noted that it remained a claimant's burden to provide evidence of disability; Plaintiff in the matter under consideration has not met this burden.

Fifth, to the extent Plaintiff suggests that a Physician's Statement for Disabled License Plates/Placard form which was completed for her in January 2006 establishes that she is disabled, a physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. See Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996). Moreover, an ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not finding a claimant disabled, as did the ALJ in the matter under consideration. See

King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). In any case, because there is substantial evidence that Plaintiff's allegations regarding the severity of her symptoms are not credible and because the medical evidence does not support Plaintiff's claims, a physician's authorizing a handicap parking placard for Plaintiff is not substantial evidence of disability. See Springfield v. Astrue, 20 WL 985306, at *20 (E.D. Mo. Mar. 15, 2010) ("[E]ven if it could be said that the opinion Dr. Buck expressed on the parking application was the opinion of a treating source, the ALJ was entitled to assign it little weight because it was unsupported by Dr. Buck's own treatment records, and with other medical evidence in the record."). Additionally, the ALJ's failure to discuss the authorization does not require reversal because the ALJ's decision is supported by substantial evidence. See Karlix, 457 F.3d at 746. In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence and that it is consistent with the regulations and case law.

C.     **Plaintiff's Past Relevant Work:**

The ALJ found that Plaintiff can perform her past relevant work as a child are provider. Upon making this determination the ALJ relied on the testimony of a VE. The VE testified that Plaintiff's past relevant work as a day care provider was "light at the lower end of the semi-skilled range." Tr. 47. The ALJ posed a hypothetical to a VE which described a person of Plaintiff's age and with Plaintiff's education who had the RFC which the ALJ assigned to Plaintiff. The VE responded that such a person would be able to perform Plaintiff's past relevant work as a day care provider and that this testimony was consistent with information contained in the Dictionary of Occupational Titles (DOT). Tr. 48-19.

20 C.F.R. § 404.1560 states, in regard to a claimant's ability to perform past relevant work:

(b) Past relevant work ...

(2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. ...

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Martise, 641 F.3d at 927 (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir.2006)); Guilliams, 393 F.3d at 804 (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio, 862 F.2d at 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985).

The ALJ in the matter under consideration included in the hypothetical he posed to the VE only those limitations which he found credible. Thus, to the extent Plaintiff asserts that the hypothetical posed to the VE was improper, Plaintiff is incorrect. Moreover, because this hypothetical question precisely set forth all of Plaintiff's impairments and because the court has found that the ALJ's RFC determination is supported by substantial evidence, the VE's testimony constitutes substantial evidence supporting the ALJ's decision. Martise, 641 F.3d at 927 (8th Cir. 2011) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix, 465 F.3d at 889; Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995) (holding that where an ALJ's hypotheticals included all of a claimant's impairments as supported by the record, and the VE limited his opinion in this regard, an ALJ properly relies on the VE's testimony); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Plaintiff argues that the ALJ failed to make explicit findings regarding the mental demands of her past relevant work. First, the ALJ did not find that Plaintiff had a severe mental impairment and he did not include a mental impairment in Plaintiff's RFC. The court has found that the ALJ's RFC determination is based on substantial evidence. As such, the ALJ was not required to consider the mental demands of Plaintiff's past relevant work as the mental demands of such work were not relevant as to whether Plaintiff could perform this work. Second, the ALJ relied on the testimony of the VE whose testimony was consistent with the DOT. See 20 C.F.R. § 404.1560(b)(2). In

conclusion, the court finds that the ALJ's determination that Plaintiff can perform her past relevant work is supported by substantial evidence and that it is consistent with the regulations and case law.

**IV.**
**CONCLUSION**

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 17,

**IT IS FURTHER ORDERED** that a separate Judgment, incorporating this Memorandum Opinion, shall be entered in favor of Defendant and against Plaintiff.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 13th day of July, 2012.